UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PRIVATAIR S.A., a Swiss corporation,     ) | |
|           ) | |
|           Plaintiff,  ) | Case No. _____ |
|           ) | |
|     v.        ) | **PRIVATAIR S.A.'S COMPLAINT** |
|           ) | **FOR BREACH OF CONTRACT** |
| THE REPUBLIC OF CONGO; and   ) | |
| EQUATORIAL CONGO AIRLINES SA, a  ) | |
| Congolese corporation,     ) | |
|           ) | |
|           Defendants.  ) | |
|           ) | |

Plaintiff, PrivatAir S.A. ("PrivatAir" or "Plaintiff"), for its claims for relief against Defendants, alleges as follows:

### I.    PARTIES

1.    Plaintiff PrivatAir is a Swiss corporation with its principal place of business in Switzerland.  PrivatAir is in the business of purchasing and leasing aircraft to airlines.

2.    Defendant Republic of Congo ("Congo") is a sovereign foreign nation and qualifies as a "foreign state" pursuant to 28 U.S.C. § 1603.

3.    Defendant Equatorial Congo Airlines S.A. ("ECAir") is a corporation created under the laws of the Republic of Congo, with its principal place of business in the Republic of Congo.  Ninety-nine and 9/10 percent of the stock of ECAir is owned by the Republic of Congo, and it is operated as an agency or instrumentality of the Republic of Congo.  It therefore should be considered a "foreign state" under 28 U.S.C. § 1603.

PRIVATAIR, S.A.'S COMPLAINT FOR BREACH OF
CONTRACT: CASE NO. _____ - 1

129273.0002/7449452.2

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

4.     ECAir is an *alter ego* of the Republic of Congo.  ECAir appears to have been insolvent at the time of the transactions in question.  In 2015, ECAir was undercapitalized and received a substantial cash injection from the Republic of Congo.  In fact, ECAir has never made a profit.  It runs a continuous operating loss and relies for its survival on continuing cash infusions from the Republic of Congo to cover cash flow, payroll and asset purchases.  The Republic of Congo also regularly guarantees loans and obligations of ECAir, including the ones at issue in this case.  The Republic of Congo has even paid ECAir's legal fees.  The Republic of Congo has always controlled ECAir by appointing a majority of the board of directors of ECAir.

5.     In 2006, PrivatAir entered into a contract (the "Purchase Agreement") to purchase two model 787-800 aircraft from the Boeing Company, with delivery dates of May 2015 (Aircraft A) and October 2016 (Aircraft B).  The aircraft were to be manufactured at Boeing's facilities in the state of Washington.

6.     On December 16, 2013, PrivatAir entered into an Aircraft Purchase Agreement ("APA"), whereby it agreed to sell Aircraft A and Aircraft B to ECAir upon taking delivery of the aircraft from Boeing.  As part of this agreement, ECAir agreed to advance PrivatAir funds to pay Boeing for the aircraft under the Purchase Agreement.  As security, PrivatAir pledged its rights under the Purchase Agreement.

7.     On that same date as the APA, PrivatAir and ECAir entered into an Additional Commitments Agreement ("ACA"), in which the parties set forth, among other things, the compensation PrivatAir would receive as consideration for selling the aircraft to ECAir.  A copy of the ACA is attached as Exhibit 1 and is incorporated by reference in this Complaint.

8.     Also on December 16, 2013, Boeing entered into a Consent to Assignment of Purchase Agreement Rights, by which it consented in writing, for security purposes, to PrivatAir's assignment, to ECAir of PrivatAir's purchase rights to the two aircraft.

9.     On August 21, 2013, the Republic of Congo had issued to Boeing and PrivatAir its written guaranty (the "Guaranty") of ECAir's obligations under the APA and ACA.  A copy of the Guaranty is attached as Exhibit 2 and is incorporated by reference in this Complaint.

PRIVATAIR, S.A.'S COMPLAINT FOR BREACH OF
CONTRACT: CASE NO. _____ - 2
129273.0002/7449452.2

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

10.     Under the express terms of the Guaranty, the Republic of Congo agreed to jurisdiction in the State of Washington.  Because ECAir is an alter ego of the Republic of Congo, it too consented to jurisdiction in the State of Washington.

11.     Plaintiff PrivatAir and Defendant ECAir duly executed a settlement agreement (the "Letter Agreement") dated August 15, 2016, following Defendant ECAir's failure to pay substantial ACA payments of $6,500,000 and additional invoiced amounts.  A copy of the Letter Agreement is attached as <u>Exhibit 3</u> and incorporated by reference in this Complaint.

12.     Defendant ECAir defaulted on the Letter Agreement by failing to make any payment or undertaking to which it had agreed.

## II.        JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1330.

14.     This Court has personal jurisdiction over the Defendants under 28 U.S.C. § 1605(a)(1) and (2).

15.     Venue is proper under 28 U.S.C. § 1391(b)(2).

## III.       CLAIMS FOR RELIEF

### Count 1

### (Breach of Contract)

16.     Plaintiff repeats the allegations in paragraphs 1 through 15 above.

17.     Section 1 of the ACA required ECAir to make a series of payments to PrivatAir on specific dates.  ECAir is in default under the ACA for failing to make the following payments to PrivatAir:  (a) $2,500,000 by May 1, 2015; and (b) $4,000,000 by May 1, 2016.

18.     Despite demand, the Republic of Congo has failed and refused to make good on the Guaranty by paying PrivatAir the $6.5 million that it is owed by ECAir under the Additional Commitments Agreement.   The Republic of Congo and ECAir therefore owe PrivatAir $6.5 million, plus prejudgment interest from the dates the respective payments were due from ECAir to PrivatAir.

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

19.     PrivatAir has performed, or has been excused from performing, all of its obligations to be performed under the APA, the Additional Commitments Agreement, and the Guaranty.

### Count 2

### (Breach of Contract)

20.     Plaintiff repeats the allegations in paragraphs 1 through 19 above.

21.     Paragraph 2 of the Letter Agreement required ECAir to pay to PrivatAir the foregoing $6.5 million and an "Outstanding Amount" of invoiced storage and other charges, with interest at LIBOR +2 percent, which Outstanding Amount now totals not less than $37,048,190.20, plus prejudgment interest from the dates such respective payments were due from ECAir to PrivatAir.  ECAir defaulted on all of its obligations under the Letter Agreement.

22.     PrivatAir has performed, or has been excused from performing, all its obligations to be performed under the Letter Agreement and the Guaranty.

23.     Under the Guaranty, and because ECAir is its alter ego, the Republic of Congo is liable for all of ECAir's obligations under the Letter Agreement.

### IV.     PRAYER FOR RELIEF

WHEREFORE, PrivatAir requests judgment, jointly and severally, against both the Republic of Congo and ECAir as follows:

Under Count 1:

1.     For $6,500,000, plus prejudgment interest at the statutory rate on $2,500,000 from May 1, 2015, until paid in full, and on $4,000,000 from May 1, 2016, until paid in full;

Under Count 2:

2.     For $43,548,190.20, plus prejudgment interest from August 15, 2016, until paid in full;

3.     For its fees and costs incurred in this action; and

PRIVATAIR, S.A.'S COMPLAINT FOR BREACH OF
CONTRACT: CASE NO. _____ - 4
129273.0002/7449452.2

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

1

4.      For such other relief as this Court deems just and proper.

2

DATED:  October 23, 2018.

3

LANE POWELL PC

4

5

By    /s/ Carter M. Mann
         Carter M. Mann, WSBA No. 26254

6

7

Lane Powell PC
601 S.W. Second Avenue, Suite 2100
Portland, Oregon  97204
Telephone: 503.778.2100
Facsimile: 503.778.2200
Email: mannc@lanepowell.com

8

9

SHAWNCOULSON, LLP

10

11

William H. Shawn, Esq.
*Pro Hac Vice Pending*
1320 19th St., NW, Suite 601
Washington, DC 20036-1655
Telephone: 202.331.2300
Facsimile: 202.664.8383
Email: wshawn@shawncoulson.com

12

13

14

15

*Attorneys for Plaintiff Privatair S.A.*

16

17

18

19

20

21

22

23

24

25

26

27

PRIVATAIR, S.A.'S COMPLAINT FOR BREACH OF
CONTRACT: CASE NO. _____ - 5

129273.0002/7449452.2

**Exhibit "1"**

Additional Commitments Agreement

ADDITIONAL COMMITMENTS AGREEMENT EXECUTION COPY

# ADDITIONAL COMMITMENTS AGREEMENT

dated as of 16 December 2013

between

**PRIVATAIR S.A.**

as Seller

and

**EQUATORIAL CONGO AIRLINES S.A**

as Buyer

Two Boeing Model 787-800 VIP Aircraft

- 1 -

**291**

## ADDITIONAL COMMITMENTS AGREEMENT

THIS ADDITIONAL COMMITMENTS AGREEMENT (as it may be amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof, this "<u>Agreement</u>") dated as of ℃ December 2013, is made by and among PRIVATAIR S.A., a Swiss company having its registered office at Chemin des Papillons N° 18, P.O. Box 572, 1215 Geneva Airport, Switzerland (the "<u>Seller</u>"), and EQUATORIAL CONGO AIRLINES S.A., a Congolese company whose address and principal place of business is at 1604, Avenue des Trois Martyrs, Batignolles, Republic of Congo ("Buyer").

### W I T N E S S E T H:

WHEREAS, The Boeing Company (the "<u>Manufacturer</u>") and the Seller are parties to (i) that certain Purchase Agreement No. 3131 November 2006, dated as of 14 November 2006 as amended the last time on 10 October 2011, which provides, among other things, for the sale by the Manufacturer to the Seller of, among other things, two (2) Boeing Model 787-800 aircraft (the "<u>Aircraft</u>") (together with any amendments, modifications, letter agreements, and supplements thereto, the "<u>Purchase Agreement 3131</u>"), and (ii) that certain Aircraft General Terms Agreement AGTA-PTS, dated 14 November 2006 (the "<u>AGTA</u>"), which is incorporated by reference in the Purchase Agreement;

WHEREAS, the Buyer wishes to acquire the Aircraft immediately after delivery thereof pursuant to the Purchase Agreement 3131 together with all its rights under the Purchase Agreement, and the Seller is willing to sell the Aircraft assign such rights to the Buyer, all on the terms and conditions hereinafter set forth (the " ECAir <u>Purchase Agreement</u>") of even date with the Agreement;

WHEREAS, the Buyer has granted a predelivery payment loan to the Seller to allow the seller to pay the predelivery payments due under the Purchase Agreement 3131 (the "**PDP Loan**") and the Seller has secured its obligations thereunder through a security assignment of its rights under the Purchase Agreement 3131;

WHEREAS, the Manufacturer has agreed to the assignments of rights (by way of security) pursuant to the ECAir Purchase Agreement and the PDP Loan under the Boeing Consent to the Assignment of Purchase Agreements Rights of even date herewith (the "Boeing Consent")

WHEREAS, the Parties have agreed to enter into this Agreement in order to determine the remuneration the Seller will receive in consideration of it entering into the ECAir Purchase Agreement :

NOW, THEREFORE, in consideration of the mutual agreements herein contained and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

Section 1.     <u>Assignment Fee</u>

Additional Commitments Agreement

- 1 -

**292**

*ADDITIONAL COMMITMENTS AGREEMENT*

In consideration of the Seller entering into the ECAir Purchase Agreement 1 and the obligations set out in Section 2 below, the Buyer hereby agrees to pay to the Seller (or to any entity which the Seller may from time to time designate in writing) upon the receipt of the consent of the Manufacturer to the assignments of rights contained in the ECAir Purchase Agreement and the PDP Loan pursuant to the Boeing Consent on or before each of the dates set out below in Column 1, the corresponding amount set out opposite such date in Column 2:

| Column 1 | Column 2 |
| --- | --- |
| Date | Amount |
| Upon signature of this Agreement | USD4,100,000.00 (four million, one hundred thousand United States Dollars) |
| 31ˢᵗ December 2013 | USD2,500,000.00 (two million, five hundred thousand United States Dollars) |
| 31ˢᵗ October 2014 | USD2,500,000.00 (two million, five hundred thousand United States Dollars) |
| 1ˢᵗ May 2015 | USD2,500,000.00 (two million, five hundred thousand United States Dollars) |
| 1ˢᵗ May 2016 | USD4,000,000.00 (four million United States Dollars) |

The Buyer will provide a first demand guarantee from the Ministry of Finance of the Government of Equatorial Congo for each of its payment obligations under the ECAir Purchase Agreement, the PDP Loan and this Agreement substantially in the form set out in Schedule 1 (the "Guarantee").

Section 2.    Further Obligations of Seller

The Seller will not amend any provisions of the Purchase Agreement 3131 without the consent of the Buyer and will at all times advise the Buyer with respect to any notifications from the Manufacturer or any other notifications or implementation of the provisions of the Purchase Agreement 3131 and the Seller remains liable towards the Buyer for meeting all deadlines set out therein other than in respect of the payment obligations of the Buyer pursuant to the ECAir Purchase Agreement .

The Seller will supervise the reconfiguration of the Aircraft from a VIP to a commercial airline interior ("the Reconfiguration"), at all times in close collaboration and in agreement with the Buyer.  The Seller will ensure an entry into service within three (3) months of the Date of

2 -

**293**

*ADDITIONAL COMMITMENTS AGREEMENT*

Delivery of the Aircraft from Boeing as defined in the Purchase Agreement 3131, except for reasons outside the Seller's control, such as late delivery or certification of BFEs directly ordered or specified by the Buyer.  Such reconfiguration may of course not have any impact on the airworthiness of the Aircraft and the Seller shall ensure that such reconfiguration shall at all times be EASA compliant.

In this context the Seller will provide entry-into-service assistance free of charge in relation to its own labour cost and travel expenses incurred relative to the Aircraft.  For the avoidance of doubt, third party (including H4 Aerospace) incurred fees, service charges, costs and expenses will be reimbursed to Seller at cost.   Pre-start-up training and preparation costs usually paid for as part of the traditional wet-lease arrangements between Seller and Buyer will remain payable by the Buyer pursuant to the relevant wet-leases.

Section 3.      Confidentiality Agreement

Both Parties, (each a "Disclosing Party") agree that they will not disclose, directly or indirectly, any terms of this Agreement provided that a Disclosing Party may (a) use, retain and disclose any such information to its special counsel, financial advisors, any party or person refinancing or financing the acquisition of the Aircraft by the Buyer  and public accountants, who shall maintain the confidentiality of the Agreement, (b) disclose any such information as may be required by Applicable Laws or by an order of any court of competent jurisdiction; and (c) to the extent that the Disclosing Party may have received a subpoena or other written demand under color of legal right for such information, disclose such information, but it shall first, as soon as practicable upon receipt of such demand, furnish a copy thereof to the other Party, and the Disclosing Party shall afford the other Party reasonable opportunity, at the moving Person's cost and expense, to obtain a protective order or other reasonably satisfactory assurance of confidential treatment for the information required to be disclosed.

Section 4.      Notices.

The address for notices or requests pursuant to this Agreement is as follows:

Seller:

Privatair S.A.
Chemin des Papillons n° 18
P.O. Box 572
1215 Geneva Airport
Switzerland
Attn: President & CEO

- 3 -

294

*ADDITIONAL COMMITMENTS AGREEMENT*

Buyer:

Equatorial Congo Airlines S.A
1604, Avenue des Trois Martyrs, Batignolles,
Republic of Congo

Attn: Chief Executive Officer
    Chief Operating Officer

E-mail: fatima.beyinamoussa@flyecair.com
    johan.maertens@flyecair.com
Telephone: 242 06 869 7730

Section 5.    Miscellaneous.

(a)    Waiver/Severability.

Failure or delay by any party to enforce any provision of this Agreement will not be construed as a waiver.  If any provision of this Agreement is held unlawful or otherwise ineffective by a court of competent jurisdiction, the remainder of this Agreement will remain in effect.  The rights and remedies provided in this Agreement are cumulative and in addition to any and all rights and remedies provided by law.

(b)    Counterparts.

This Agreement may be executed by the parties in separate counterparts, each of which when so executed and delivered will be an original, but all such counterparts will together constitute but one and the same instrument.

(c)    Amendments.

Any amendment or waiver in relation to this Agreement shall not be effective unless in writing and signed by the parties hereto.

(d)    Headings.

The headings for sections, clauses and paragraphs in this Agreement are for convenience of reference only and shall not be used to construe the meaning of, or affect the interpretation of, the various terms and provisions of this Agreement.

(e)    Further Assurances.

Each party shall, at any time and from time to time, at the cost and expense of the Buyer, promptly and duly execute and deliver any and all such further instruments and documents and

- 4 -

*ADDITIONAL COMMITMENTS AGREEMENT*

take such further action as may be reasonably required in order to obtain the full benefits of this Agreement and to implement the rights and powers herein granted or contemplated hereby.

(f)    Governing Law.

This Agreement shall in all respects be governed by, and construed and enforced in accordance with the laws of England and Wales.

(g)    Entire Agreement.

This Agreement, the ECAir Purchase Agreement , the PDP Loan. the Boeing Consent and the Guarantee together constitute the entire agreement of the parties hereto with respect to the subject matter hereof, and all prior or contemporaneous understandings or agreements, whether written or oral, among any of the parties hereto with respect to such subject matter are hereby superseded in their entireties.

[Signature Pages Follow]

- 5 -

**296**

*ADDITIONAL COMMITMENTS AGREEMENT*

IN WITNESS WHEREOF, the parties hereto have duly executed this Additional
Commitments Agreement on the date first set forth above.


PRIVATAIR S.A..


By: _____
Name: GRES THOMAS
Title: PRESIDENT + CEO


By: _____
Name:
Title:


EQUATORIAL CONGO AIRLINES S.A.,


By: _____
Name:
Title:


By: _____
Name:
Title:


Additional Commitments Agreement

**297**

*ADDITIONAL COMMITMENTS AGREEMENT*

Schedule 1 - Form of Guarantee

- 7 -

298

**Exhibit "2"**

Guaranty

MINISTERE DE L'ECONOMIE. DES FINANCES.
DU PLAN, DU PORTEFEUILLE PUBLIC ET DE
L'INTÉGRATION
----------------------

REPUBLIQUE DU CONGO
Unité *Travail*Progrès
---------------

CABINET
------------

N° _____ 57_ _____/MEFPPPI-CAB

Brazzaville, le _____2 1 AOUT 2013_____

The Boeing Company
P. O. Box 3707
Seattle, Washington 98124
United States of America

PrivatAir SA
Chemin des Papillons 18
CH-1215 Geneva
Switzerland

Dear Sirs,

**Acquisition of two Boeing 787 aircraft ("Aircraft")**

We refer to

(i)     the Purchase Agreement and Airframe Warranties Assignment ("**PAA**") dated ___
        _____ 2013 between PrivatAir SA ("**Assignor**") and Equatorial Congo Airlines
        SA, trading as ECAir ("**Assignee**") in regard to two Boeing 787-800 Aircraft
        ("**Aircraft**") manufactured by the Boeing Company ("**Manufacturer**");   and

(ii)    the Additional Commitments Agreement ("**ACA**") dated _____ 2013 between
        Assignor and Assignee in relation to the PAA.

Unless otherwise defined herein, words defined in the PAA shall have the same meanings when used
herein.

We, hereby unconditionally and irrevocably agree and undertake to you, in your capacity of
respectively Manufacturer and Assignor, that we guarantee the Assignee's payment, performance and
compliance under the PAA and the ACA.

If you, at any time, notify us that the Assignee shall have failed to meet any of its obligations when
due under the PAA or the ACA, and that after due notification thereof such breach of the Assignee's
obligations has not been cured then we shall be liable to perform all of the Assignee's outstanding

1

Exhibit 2 - Guaranty
Page 14 - COMPLAINT FOR BREACH OF CONTRACT

obligations under the PAA or the ACA as the case may be, immediately upon first written demand, subject, however to any rights the Assignee may have under the PAA or ACA as the case may be.

This letter shall constitute our valid and legally binding obligations in accordance with its terms. Our obligations hereunder are absolute and time shall be of the essence. We agree that we may not assign or transfer any of our rights or obligations arising hereunder. The benefit of this Guarantee may not be transferred or assigned to any third party without our prior written consent.

Our liabilities and obligations under this letter shall remain in force notwithstanding any act, omission, neglect, event or matter whatsoever (other than the unconditional and irrevocable performance in full of the obligations contained herein) and the foregoing shall apply, without limitation, in relation to any winding up, dissolution, reconstruction, reorganization, legal limitation, incapacity or lack of corporate power or authority of us or of the Assignee.

Our liabilities under this letter may be enforced against us irrespective of whether any demands, steps or proceedings are being or have been made or taken against any other party, and shall be independent of any other security held by you, or rights (including rights of indemnity) you may have under any other document.

If any provision of this letter is or becomes illegal, invalid or unenforceable in any jurisdiction against us we hereby irrevocably and unconditionally agree that that will not affect the legality, validity or enforceability in that jurisdiction of any other provision of this letter or the legality, validity or enforceability in any other jurisdiction of that or any other provision of this letter.

This letter shall be governed by, and construed in accordance with the laws of the State of Washington. We hereby submit to the jurisdiction of the laws of the State of Washington to settle any dispute arising out of, or in connection with, this letter.

All notices under, or in connection with this letter shall be given in writing by registered letter with receipt confirmation or facsimile confirmed and followed by a registered letter with receipt confirmation or a letter send by courier service with receipt confirmation and shall be deemed to be given upon the actual receipt of the registered letter or the letter sent by courier service. The address, facsimile and telephone numbers of ourselves are as follows:

Etat de la République du Congo:        Ministère de l'Economie et des Finances, du Plan, du
                                       Portefeuille Public et de l'Intégration
                                       Brazzaville
                                       République du Congo

2

Exhibit 2 - Guaranty
Page 15 - COMPLAINT FOR BREACH OF CONTRACT

Please acknowledge your acceptance of the terms of this letter by signing below.

Yours faithfully,

Gilbert ONDONGO
**Ministre d'Etat, Ministre de l'Economie et des Finances, du Plan, du Portefeuille Public et de l'Intégration**
Duly authorized, for and on behalf of
**La République du Congo**

3

Exhibit 2 - Guaranty
Page 16 - COMPLAINT FOR BREACH OF CONTRACT

**Exhibit "3"**

Letter Agreement



ECAir
Equatorial Congo Airlines SA
Boulevard Denis Sassou Nguesso
Brazzaville
Republic of Congo

FAO:  Fatima Beyina-Moussa, Director General

15th August 2016

Dear Madam,

**Re:  Settlement discussions of the following outstanding matters**

PrivatAir SA ("**PTI**") and Equatorial Congo Airlines SA ("**ECAir**") (together, the "**Parties**") have been in dispute in relation to the following matters ("**Outstanding Matters**"):

(a)  Failure of ECAir to pay two outstanding instalments totalling USD 6,500,000 due pursuant to an additional commitments agreement dated 16th December 2013 (the "**ACA**");  and
(b)  The balance due in respect of certain invoices rendered by PTI including for the avoidance of doubt amounts expended historically in relation to the operation of aircraft HB-JJC ("**Outstanding Amount**") and in respect of certain security deposit in accordance with its contractual obligations as specified in the attached Schedule 2 ("**Outstanding Deposit**").

The Parties have negotiated and now hereby agree a settlement of all disputes in relation to the Outstanding Matters as of the date and in accordance with following terms and conditions of this letter ("**Letter Agreement**"). In this Letter Agreement "**Transaction Documents**" means the aircraft special terms agreement between the Parties relating to the operation on wet lease by PTI of two Boeing 787 aircraft ("**ASTA**"), the ACA and any agreement between the Parties in force at agreement at the date hereof dealing with, or otherwise imposing legal obligations in connection with, the Outstanding Matters.

1.  **PTI's obligations**

PTI, in consideration of all of the commitments by ECAir as set out in paragraph 2. below ("**ECAir Commitments**") and ECAir's agreement to all of the remedies set out in paragraph 2. below at (f) to (j) and paragraph 3 below ("**PTI Remedies**"), hereby agrees, subject always to the due and timely performance by ECAir of the ECAir Commitments as listed in Clause 2:

     (a)  that it waives any and each claim of whatever nature and in respect of any issue whatsoever made or asserted by it against ECAir prior to the date of this Letter Agreement (except for the items listed in this Letter Agreement);

Exhibit 3 - Letter Agreement
Page 17 - COMPLAINT FOR BREACH OF CONTRACT



(b) promptly, in accordance with the notices in writing given or to be given to PTI by ECAir, to prepare the relevant bills of work and collaborate in all matters to swiftly redeliver to ECAir each of the aircraft with registration numbers respectively HB-JJB, HB-JJC, HB-JJE and HB-JJH (including their respective records); and

(c) promptly to return each security deposit to ECAir when due to be returned in accordance with the terms of such security deposit;

(d) to issue a credit note for 80.000 (eighty thousand) EUR per month, further to the cost savings to be passed on to ECAir and generated from no longer having to pay for line maintenance services on the B757 HB-JJD, since it left for a maintenance check in May 2016 and until its return to service;

(e) to issue a credit note for the salary of Marcel Ngoma, detached at PrivatAir since August 2013, at an agreed upon total company cost of 5.000 (five thousand) EUR per month and for as long as Marcel Ngoma continues to be detached to PrivatAir; and

(f) to issue credit notes for the continued invoicing of a second IFD on the B767 beyond March 2016 (despite a termination notice having been given by ECAir for this service); and

(g) to issue credit notes for the amounts that will be agreed upon completion of the maintenance and overfly cost reconciliations which are currently ongoing; and

(h) To issue a credit note for half of the amount invoiced further to the JJC dispute;

(i) that invoices should be raised within eighteen months of the occurrence of the event that has given rise to such invoice, failing which they will not be taken into consideration.


**2.  Commitments and Remedies**

ECAir hereby agrees, subject always to the due performance by PTI of the PTI Commitments as listed in Clause 1:


(a) that it waives any and each claim of whatever nature and in respect of any issue whatsoever made or asserted by it against PTI prior to the date of this Letter Agreement (including but not limited to its prior claims in respect of flying irregularities in summer 2014 and IFE system for the aircraft with registration number HB-JJD and of amounts due and owing under the ACA);

Exhibit 3 - Letter Agreement
Page 18 - COMPLAINT FOR BREACH OF CONTRACT



(b) settling of the Outstanding Deposit by setting off against security deposits due to be returned by PrivatAir to ECAir ;

(c) to pay all outstanding amounts due under the ACA being a total of USD6,500,000 (six million five hundred thousand United States Dollars) as at 1st May 2016 in accordance with the following payment schedule (but subject to paragraph 3 (d) below):

| Date | Amount (USD) |
| --- | --- |
| ** September 2016 | 2,500,000 |
| 30 June 2019 or second B787 aircraft delivery date, whichever comes earlier | 4,000,000 |
| Total | 6,500,000 |

(d) subject to the timely assistance from PrivatAir, to conclude its reconciliation of outstanding invoices by 20 August 2016 (taking into account the credit notes to be issued by PrivatAir under Clause 1) and forthwith thereafter to settle immediately the remaining Outstanding Amount due in accordance with the following payment schedule (but subject to paragraph 3(d) below):

| Date | Amount (Euro) |
| --- | --- |
| [ ]August 2016 **tbd | 50% or 2,000,000, whichever is lower; |
| Each month thereafter | 4% of Outstanding Amount until payment in full of balance of Outstanding Amount |

(e) to provide to PTI any number of Swift confirmations totalling the outstanding amount of the following month's ACMI payments on or before the 25th day of the preceding month for latest value (PTI receipt) on the last working day of such preceding month; and

(f) that failure to pay any of the amounts set out or referred to at (c), (d) and (e) above , and any further amounts falling due for payment by ECAir to PTI after the date of this Letter Agreement, within five (5) business days of the due date shall result in interest on such amount becoming payable to PTI and accruing at the rate of LIBOR +2% per annum from the due date to date of receipt;

(g) that failure to pay such amounts, and any further amounts falling due for payment by ECAir to PTI after the date of this Letter Agreement, within five (5) business days of the due date shall result in an immediate right accruing to PTI to suspend all further services to ECAir without further notice;

Exhibit 3 - Letter Agreement
Page 19 - COMPLAINT FOR BREACH OF CONTRACT



(h) that invoices should be raised within eighteen months of the occurrence of the event that has given rise to such invoice, failing which they will not be taken into consideration.

(i) if ECAir is in breach of any of the ECAir Commitments PTI shall be entitled to treat such breach as a repudiatory breach by ECAir of this Letter Agreement and PTI may proceed by appropriate court action or as it may otherwise deem fit to enforce any or all the provisions of this Letter Agreement, pursue all or any of the PTI Remedies or, at its election, to enforce any of the provisions of and pursue any of its remedies in respect of any of the Transaction Documents as if this letter Agreement had never been entered into, and shall be entitled to pursue or enforce any other rights and remedies available to it in any jurisdiction.

3. (a) ECAir hereby acknowledges the amounts due from ECAir to PTI and outstanding as at the date of this Letter Agreement are as follows:

(i)      USD 6,500,000 pursuant to the ACA;

(ii)     the Outstanding Amount.

(b) It is agreed that the payment dates to be listed in paragraphs 2 (c) and 2(d) of this Letter Agreement ("**the Payment Schedules**") will be finalised when ECAir has secured a bridge funding facility in respect of its historical debts ("**ECAir Facility**") which ECAir expects to secure on or before 30th August 2016.

(c) EC Air shall notify PTI in writing forthwith upon securing the ECAir Facility including details of the date from which the EC Air shall be entitled to draw down thereunder so as to meet its payment commitments under the Payment Schedules, and the parties hereto shall within [7 (seven)] days of such notification agree the payment dates to be listed in the Payment Schedules.

(d) If the EC Facility shall not be secured by EC Air so as to be available for drawdown by EC Air by [16 September 2016] and notice thereof given pursuant to sub-paragraph (c) of this paragraph 3 or if the payment dates to be listed in the Payment Schedules shall not have been finalised within five (5) working days of such notice, the amounts set out at subparagraph (a) of this paragraph 3 together with any other amounts due and outstanding from EC Air to PTI shall become immediately due and payable without further notice being given by PTI to EC Air.

Exhibit 3 - Letter Agreement
Page 20 - COMPLAINT FOR BREACH OF CONTRACT



This Letter Agreement shall be governed by and construed in accordance with the laws of England and Wales and the Parties agree to submit to the exclusive jurisdiction of the High Court of England.

Please acknowledge and confirm your agreement to the terms and conditions of this Letter Agreement by signing and dating it where indicated below.

Yours faithfully,

For and on behalf of
PRIVATAIR SA

..................................................................

We acknowledge and agree to the terms and conditions of this settlement letter.
Date:
For and on behalf of
EQUATORIAL CONGO AIRLINES SA

..................................................................

Exhibit 3 - Letter Agreement
Page 21 - COMPLAINT FOR BREACH OF CONTRACT